IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RANDY CLAWSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     1:23CV937 |
| | ) |
| TODD ISHEE, Secretary of the | ) |
| North Carolina Department of | ) |
| Adult Correction, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1; see also Docket Entry 6 (Amended Petition (the "Operative Petition")).) Respondent moved to dismiss the Operative Petition on grounds of untimeliness (Docket Entry 10; see also Docket Entry 11 (Supporting Brief)), Petitioner responded in opposition (Docket Entry 13), and Respondent replied (Docket Entry 16). For the reasons that follow, the Court should deny Respondent's instant Motion.

**I. Procedural History**

On March 29, 2017, in the Superior Court of Guilford County, a jury found Petitioner guilty of two counts of first degree kidnapping in cases 14 CRS 68712 and 16 CRS 24496, two counts of indecent liberties with a child in cases 14 CRS 68714 and 16 CRS 24497, as well as first degree sex offense with a child and felony

sex act with a student by a teacher in case 16 CRS 24493. (See Docket Entry 6 at 16; see also Docket Entry 1-1 at 39, 42-45; Docket Entry 11-2 at 2-4.)[1] The trial court arrested judgment on the first degree kidnapping convictions (see Docket Entry 1-1 at 48), and imposed a sentence of imprisonment for 1) 300 to 420 months on the first degree sex offense with a child conviction (see Docket Entry 1-1 at 51-52), 2) a consecutive term of 12 to 24 months on the felony sex act with a student by a teacher conviction (see Docket Entry 1-1 at 49-50; see also Docket Entry 11-3 at 2-3), and 3) a consecutive term of 15 to 27 months on the consolidated indecent liberties with a child convictions (see Docket Entry 1-1 at 59-60; see also Docket Entry 11-3 at 7-8), along with a requirement that Petitioner register as a sex offender and submit to satellite-based monitoring upon release (see Docket Entry 1-1 at 55, 58, 61; see also Docket Entry 11-3 at 6, 9). Petitioner's direct appeal raised solely ineffective assistance of counsel claims (see Docket Entry 11-4), and the North Carolina Court of Appeals held that, "[a]fter a thorough review of the cold record before [the court], [it was] unable to determine whether trial counsel's performance fell below an objective standard of reasonableness," and "dismiss[ed] th[e] appeal without prejudice," State v. Clawson, No. COA18-57, 263 N.C. App. 710, 822 S.E.2d 795,

---

[1] Throughout this document, pin citations to page numbers refer to the page numbers that appear in the footer appended to documents upon their docketing in the CM/ECF system.

2019 WL 438428, at *2 (Feb. 5, 2019) (unpublished). Petitioner did not further pursue his direct appeal. (See Docket Entry 1 at 5.)

Petitioner, through counsel, thereafter submitted a motion for appropriate relief ("MAR") to the trial court (see Docket Entry 1-1 at 112-69; see also Docket Entry 11-6), which counsel dated as signed on May 7, 2019 (see Docket Entry 1-1 at 169), and which that court accepted as filed on May 14, 2019 (see Docket Entry 11-7 at 2). On October 8, 2019, Petitioner's counsel submitted a Motion for Post-Conviction Discovery to the trial court (see Docket Entry 1-1 at 170-75), seeking "access to the 'complete files of all law enforcement and prosecutorial agencies involved in the investigation [] or prosecution of [Petitioner]'" (id. at 170 (quoting N.C. Gen. Stat. § 15A-1514(f))), and arguing that such access would "allow him, potentially, to identify additional meritorious state and federal claims, which counsel c[ould] incorporate into [Petitioner]'s pending MAR" (id. at 170-71). The state filed an answer to the MAR on January 21, 2020. (See Docket Entry 1-1 at 176-89.)

The trial court entered an order on June 10, 2020, summarily denying Petitioner's MAR on its merits ("Initial Denial Order"). (See id. at 190-91; see also Docket Entry 11-8.) Petitioner, through counsel, subsequently submitted a "Motion to reconsider and ultimately quash the [trial c]ourt's June 10, 2020 dismissal order and to stay [Petitioner]'s MAR proceedings until the MAR discovery

3

process is completed" (Docket Entry 1-1 at 192-95; see also Docket Entry 11-9), which counsel dated as signed on July 13, 2020 (see Docket Entry 1-1 at 194), and which that court accepted as filed on July 17, 2020 (see Docket Entry 11-9 at 2). The trial court sent an email to the parties on July 21, 2020, which provided as follows:

> [Petitioner's counsel],
>
> I have received your Motion to reconsider and ultimately quash the [c]ourt's June 10, 2020 dismissal order and to stay [Petitioner]'s MAR proceedings until the MAR discovery process is completed. Thanks for bringing this to my attention. I have forwarded the copy of the February 2020 email to show both parties that the State's answer was filed. I am not sure why this was not addressed to me sooner so I would have known that the discovery process was not complete. In light of your motion and supporting evidence indicating that you still have not completed discovery I will grant the motion. [Petitioner's counsel] please draft an Order for me to sign and send to all parties in this email so that I can keep track. Also, please let me know when discovery has been completed and if you intend to file a response to the State's Answer. I will allow any extension of time to file to 30 days after receipt of complete discovery. Thanks.

(Docket Entry 13-1 at 1.) By order dated September 1, 2020, the trial court quashed its Initial Denial Order, and "postpone[d] adjudication of [Petitioner]'s MAR until his attorney . . . ha[d] reviewed the complete files of the Guilford County District Attorney's Office and the Greensboro Police Department, completed his MAR investigation based on this review, and filed [Petitioner]'s amended MAR." (Docket Entry 11-10 at 2 ("Quash Order").)

4

Petitioner, through counsel, submitted an amended MAR ("Amended MAR") to the trial court (see Docket Entry 1-1 at 196-352; see also Docket Entry 11-11), which that court accepted as filed on June 19, 2021 (see Docket Entry 11-12 at 2). After the state filed an answer to the Amended MAR on July 18, 2022 (see Docket Entry 1-1 at 353-75), and Petitioner replied on October 3, 2022 (see id. at 376-409), the trial court summarily denied the Amended MAR by order dated October 12, 2022 (see id. at 410; see also Docket Entry 11-12). Petitioner's counsel then submitted a petition for writ of certiorari to the North Carolina Court of Appeals seeking review of the trial court's denial of Petitioner's Amended MAR (Docket Entry 1-1 at 411-61; see also Docket Entry 11-13), which counsel dated as signed on March 10, 2023 (see Docket Entry 1-1 at 460), and which that court accepted as filed on the same date (see id. at 462). The North Carolina Court of Appeals denied the certiorari petition by order dated July 20, 2023. (See id.)

Petitioner, through counsel, subsequently commenced this action by filing a petition under Section 2254 in this Court on November 3, 2023 (see Docket Entry 1 at 11), which he amended as of right on January 16, 2024 (see Docket Entry 6 at 173). Respondent thereafter filed the instant Motion seeking dismissal of the Operative Petition on grounds of untimeliness (Docket Entry 10; see also Docket Entry 11 (Supporting Brief)), Petitioner submitted a

5

response in opposition to the instant Motion (see Docket Entry 13), and Respondent replied (Docket Entry 16). For the reasons that follow, the Court should deny the instant Motion.

## II. Grounds for Relief

The Operative Petition asserts two grounds for relief: 1) "[t]rial counsel was ineffective because he failed to request limiting instructions prohibiting jurors from considering the [s]tate's extensive 'profile' and PTSD expert testimony and evidence as substantive evidence [the victim] had, in fact, been sexually abused by [Petitioner] - at some point - while attending Lindley Elementary School" (Docket Entry 6 at 100 (bold font and block formatting omitted)); and 2) "[t]rial counsel was ineffective because he failed to object and move to strike or request a mistrial when Dr. Stacy Thomas, Bobbie Bingham, and Detective Nero repeatedly vouched for [the victim]'s credibility and truthfulness" (id. at 138 (bold font and block formatting omitted)).

## III. Discussion

Respondent moves for dismissal of the Operative Petition on the grounds that Petitioner filed it outside of the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1). (See Docket Entry 11 at 7-16.) In order to assess Respondent's statute of limitations argument, the Court must first determine when Petitioner's one-year period to file his Petition commenced. The

6

Case 1:23-cv-00937-TDS-LPA   Document 17   Filed 10/02/24   Page 6 of 15

United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on a claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).

Here, the parties agree that subparagraph (A) of Section 2244(d)(1) applies,[2] that the one-year limitations period began running 35 days after the North Carolina Court of Appeals's decision dismissing Petitioner's appeal when Petitioner opted not

---

[2] Neither party contends that subparagraphs (B), (C), or (D) of Section 2244(d)(1) apply. (See Docket Entries 6, 11, 13, 16.)

7

to pursue further review (see Docket Entry 11 at 5, 9; see also Docket Entry 13 at 4),[3] and that the limitations period continued to run until May 14, 2019, when Petitioner filed his MAR with the trial court (see Docket Entry 11 at 9; see also Docket Entry 13 at 4).[4]  The parties differ, however, in how they calculate the remainder and expiration of the limitations period.  (Compare Docket Entry 11 at 9-12 & Docket Entry 16 at 1-4 (asserting that original petition qualifies as untimely with one-year clock expiring on August 11, 2023), with Docket Entry 13 at 4-18 (deeming original petition timely because limitations period expired on December 19, 2023).)

In support of the argument that Petitioner filed the original petition after the expiration of the limitations period, Respondent contends as follows:

> [T]he [North Carolina] Court of Appeals issued its decision in Petitioner's case on 5 February 2019. Petitioner declined to seek further review, and his conviction became final for AEDPA purposes 35 days later, on 12 March 2019.  See Ward[ v. Cabarrus County, No.

---

[3] Petitioner erroneously asserted that the North Carolina Court of Appeals issued its decision on February 4, 2019, and thus calculated that the limitations period began 35 days later on March 11, 2019. (See Docket Entry 13 at 4.)  As Respondent recognized (see Docket Entry 11 at 5, 9), however, the Court of Appeals dated its decision on February 5, 2019, see Clawson, 2019 WL 438428, at *1, and therefore, the one-year statute of limitations began to run 35 days later on March 12, 2019.

[4] Both parties miscalculate the time period between the start of the limitations period and the filing of Petitioner's MAR. (See Docket Entry 11 at 9 (asserting that "Petitioner filed his [] MAR 53 days after his conviction became final"); see also Docket Entry 13 at 4 (stating that the time "[f]rom March 11, 2019 to May 14, 2019 is 54 days").)  The time between March 12, 2019, when Petitioner's convictions finalized, and May 14, 2019, when Petitioner filed his MAR with the trial court, actually amounts to 63 days.

> 1:08CV616, 2009 WL 929601, at *1 (M.D.N.C. Apr. 3, 2009) (unpublished).] Petitioner filed his [] MAR 53 days after his conviction became final, on 14 May 2019, which tolled the statute of limitations. The statute of limitations remained tolled until (at the latest) 2 September 2020, when the state trial court "quashed" its [Initial Denial O]rder . . . and "postpone[d] adjudication" until Petitioner filed an amended MAR.
>
> At that point, Petitioner did not have any "properly filed application for State post-conviction or other collateral review" as required by 28 U.S.C. § 2244(d)(2). As a general matter, state collateral filings usually toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). However, in these unique circumstances, the time between the date [of] the [Quash O]rder . . . and the date of filing of the Amended MAR should not be tolled.
>
> While the state trial court stated in its [Quash O]rder . . . that it was "postpon[ing] adjudication" of the MAR, the [Quash O]rder made clear that the [] MAR was no longer operative and the [trial] court was not going to consider any of Petitioner's claims for appropriate relief until an "amended MAR' was filed on Petitioner's behalf. Petitioner of course did not seek review of the [Quash O]rder . . . and, for that reason, there was never a "final disposition by the highest court" as to the [] MAR. The [Quash O]rder . . . ended consideration of the [] MAR at Petitioner's request, and invited Petitioner to file an amended MAR. The [A]mended MAR was not filed for more than nine months (or approximately 290 days), on 19 June 2021. This Court should hold that[,] during those 290 days, the AEDPA statute of limitations continued to run because there was not [sic] "properly filed" MAR which served to toll the limitations period.

(Docket Entry 11 at 9-10 (footnote and internal parenthetical citations omitted) (unmatched parenthesis as in original).) Respondent further contends that the limitations period remained

9

tolled from the date Petitioner filed his Amended MAR on June 19, 2021, until the North Carolina Court of Appeals denied Petitioner's certiorari petition on July 20, 2023, and then continued to run until it expired on August 11, 2023, 84 days before Petitioner filed the original petition in this Court on November 3, 2023 (see id. at 12).[5]

In response, Petitioner disputes Respondent's assertion that the trial court's Quash Order "made clear that the [] MAR was no longer operative" (id. at 10), and argues that the trial court's email to the parties indicating that the trial court intended to grant Petitioner's motion to quash and the trial court's Quash Order "both made clear [Petitioner]'s properly filed MAR was still pending - and had never not been pending - because the email and [Quash O]rder effectively nullified [the trial court's] admittedly premature and unfair [Initial Denial O]rder . . . as if [that Order had] never happened." (Docket Entry 13 at 15 (emphasis supplied by Petitioner).) According to Petitioner, "based on common sense English and textual interpretation, [the trial court's Quash Order] says . . . [Petitioner]'s MAR is still operative because [the trial court] said [it was] not adjudicating [Petitioner]'s 'MAR' until

---

[5] As 63 days (rather than 53 days as Respondent asserted (see Docket Entry 11 at 9)) elapsed between the date Petitioner's convictions finalized on March 12, 2019, and the date Petitioner filed his MAR on May 14, 2019, under Respondent's tolling arguments, 290 more days of the limitations period ran between the trial court's Quash Order on September 2, 2020, and the date Petitioner filed his Amended MAR on June 19, 2021, leaving just 11 days remaining on the one-year clock. Thus, under Respondent's calculations, the one-year period would have expired on August 1, 2023, and Petitioner would have filed the original petition 94 days out of time.

10

[Petitioner] filed his 'amended MAR,'" and "[o]ne can only file an 'amended' pleading if there's a pending pleading that needs amended [sic]." (Id. at 17 (quoting Docket Entry 11-10 at 2).) Petitioner thus maintains that the statute of limitations remained tolled for the entire time between the filing of his MAR on March 14, 2019, and October 12, 2022, when the trial court denied his Amended MAR. (See Docket Entry 13 at 15.) Unlike Respondent (see Docket Entry 11 at 11 (conceding that "statute of limitations was tolled when Petitioner filed his [A]mended MAR . . . until the state Court of Appeals denied his petition for writ of certiorari"),[6] Petitioner contends that the limitations period then ran for 149 more days between the trial court's denial of the Amended MAR on October 12, 2022, and the date Petitioner filed his certiorari petition with the North Carolina Court of Appeals on March 10, 2023, with 152 days remaining in the one-year period (see Docket Entry 13 at 14). In Petitioner's view, AEDPA's limitations clock again restarted on July 20, 2023, when the North Carolina Court of Appeals denied his certiorari petition, and then continued to run for 106 days until

---

[6] Respondent points out that, "after the trial court denied Petitioner's Amended MAR on 12 October 2022, Petitioner waited 149 days to file a petition for writ of certiorari with the state Court of Appeals on 10 March 2023" and that, "[u]nder Taylor's explicit holding, that entire time is tolled." (Docket Entry 11 at 11 n.5 (citing Taylor, 186 F.3d at 561).) Although Respondent "believes that Taylor can and should be distinguished on these facts, as a literal application of Taylor to this and similar cases would allow a habeas petitioner to delay an unlimited amount of time between the order denying his MAR and seeking certiorari review" (id.), Respondent expressly forfeited that argument (see id. ("[S]ince the statute of limitations has expired notwithstanding the 149 days [between denial of the Amended MAR and the certiorari petition], Respondent does not ask th[e] Court to distinguish Taylor in this case.")). Accordingly, the Court need not address that argument.

11

Petitioner filed the original petition in this Court on November 3, 2023, 46 days before the expiration of AEDPA's one-year clock on December 19, 2023. (See id.)

Neither party has correctly calculated the one-year limitations period. For the reasons that follow, the undersigned recommends that the Court find that Petitioner timely filed both his original petition and the Operative Petition before the expiration of AEDPA's limitations period.

The limitations period under subparagraph (A) began to run on March 12, 2019, 35 days after the North Carolina Court of Appeals dismissed Petitioner's appeal on February 5, 2019, and Petitioner did not seek further review. See N.C. R. App. P. 14(a) (requiring notice of appeal within 15 days after Court of Appeals issues mandate), 15(b) (allotting 15 days for filing of petition for discretionary review following Court of Appeals's mandate), 32(b) (stating that mandate shall issue 20 days after filing of opinion unless court orders otherwise); see also Gonzalez v. Thaler, 565 U.S. 134, 149–50 (2012) (holding that a petitioner's case finalizes when time for pursuing direct review expires); Saquilar v. Harkleroad, 348 F. Supp. 2d 595 (M.D.N.C. 2004) (ruling that the petitioner's conviction finalized 35 days after Court of Appeals issued opinion where the petitioner did not file petition for discretionary review), appeal dismissed, 145 F. App'x 444 (4th Cir. 2005). Petitioner's one-year period under AEDPA then ran for 63

12

days from March 12, 2019, to May 14, 2019, when Petitioner filed his MAR in the state trial court. See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [AEDPA].").

Contrary to Respondent's contentions (see Docket Entry 11 at 7-12; see also Docket Entry 16 at 1-4), AEDPA's clock did not restart when the trial court entered its Quash Order on September 2, 2020. Notably, Respondent cited no authority supporting his assertion that "the [Quash O]rder made clear that the [] MAR was no longer operative" and thus ended statutory tolling under Section 2244(d)(2) (Docket Entry 11 at 10 (emphasis added)), and independent research revealed no cases supporting that position. Moreover, the language of the Quash Order itself belies Respondent's contentions. In the Quash Order, the trial court indicated that it would "postpone adjudication of [Petitioner]'s MAR until his attorney . . . ha[d] reviewed the complete files of the Guilford County District Attorney's Office and the Greensboro Police Department, completed his MAR investigation based on this review, and filed [Petitioner]'s amended MAR." (Docket Entry 11-10 at 2 (emphasis added).) That language clearly indicates that Petitioner's MAR remained pending, because no reason would exist for the trial court to "postpone adjudication" of a filing not

13

pending before the court. The trial court's stay of the MAR proceedings until Petitioner filed an amended MAR further supports the conclusion that the MAR remained pending, as no need would have existed for a stay if no MAR remained pending. For these reasons, tolling under AEDPA extended from May 14, 2019, through July 20, 2023, when the North Carolina Court of Appeals denied Petitioner's certiorari petition seeking review of the trial court's denial of Petitioner's Amended MAR. See Taylor, 186 F.3d at 561 ("[U]nder § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review), is tolled from the limitations period for federal habeas corpus petitioners . . . .").

The limitations period restarted on July 20, 2023, and continued to run, unimpeded, for 106 days until November 3, 2023, when Petitioner timely filed his original petition in this Court (see Docket Entry 1), with 196 days remaining in the limitations period. Petitioner thereafter filed the Operative Petition 74 days later on January 16, 2024 (see Docket Entry 6), with 122 days left on AEDPA's clock. In light of the fact that Petitioner filed both the original petition and the Operative Petition within the statute of limitations, the Court need not reach Respondent's alternative argument that the claims in the Operative Petition do not relate

14

back to the claims in the original petition (see Docket Entry 11 at 12-16; see also Docket Entry 16 at 4-7).

## IV. Conclusion

The statute of limitations does not bar the Operative Petition.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 10) be denied.

<pre>
                          /s/ L. Patrick Auld
                            L. Patrick Auld
                     United States Magistrate Judge
</pre>

October 2, 2024