IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RANDY CLAWSON,                     )
                                   )
            Petitioner,            )
                                   )
      v.                           )      1:23CV937
                                   )
LESLIE COOLEY DISMUKES, Secretary, )
North Carolina Department of Adult )
Correction,                        )
            Respondent.            )

## MEMORANDUM ORDER

On August 8, 2025, the United States Magistrate Judge's 131-page Memorandum Opinion and Recommendation was filed, and notice was served on the parties in accordance with 28 U.S.C. § 636(b). Petitioner then filed eighty-five pages of objections to the report and recommendation within the time limits prescribed by § 636. (Doc. 49.) Respondent filed a response to Petitioner's objections (Doc. 50), and the court held a hearing on Petitioner's objections on December 16, 2025.

Petitioner, a teacher, was convicted of several sex offense charges involving a minor student that were found to have occurred during the student's first- and third-grades years; Petitioner was acquitted of crimes allegedly occurring during the student's second-grade year. At trial, the State presented several witnesses, including the minor alleged victim, and three expert witnesses - a social worker, pediatrician, and licensed professional counselor - who provided testimony that the victim

displayed symptoms consistent with sexually-abused children ("profile" testimony) and (as to the licensed counselor) suffered from post-traumatic stress disorder ("PTSD"). Petitioner's objections relate principally to their testimony.

Of Petitioner's objections, one warrants discussion. Petitioner objects to the Magistrate Judge's determination that trial counsel's failure to request a limiting instruction for the testimony of the State's PTSD expert was not objectively unreasonable. (Doc. 49 at 45.) Specifically, Petitioner contends that, because North Carolina case law required the trial court to instruct the jury as to the permissible limited uses of PTSD expert testimony, no reasonably competent defense attorney in North Carolina would decline to request the limiting instruction. (See id. at 50.)

To establish an ineffective assistance of counsel claim, a petitioner must make two, distinct showings. First, the petitioner is "required to establish that his 'counsel's representation fell below an objective standard of reasonableness,' measured by the 'prevailing professional norms.'" Fisher v. Lee, 215 F.3d 438, 446 (2000) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). Second, the petitioner must show prejudice, that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 446-47 (quoting Strickland, 466 U.S. at

2

694).

When reviewing a challenge to a conviction for ineffective assistance of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Accordingly, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." Harrington v. Richter, 562 U.S. 86, 110 (2011) (quoting Strickland, 466 U.S. at 686).

Moreover, when addressing a habeas corpus petitioner's challenge to a state conviction pursuant to 28 U.S.C. § 2254, the federal court must also give deference to a state court's determination regarding ineffective assistance of counsel. See Moore v. Hardee, 723 F.3d 488, 496 (4th Cir. 2013). In fact, "the standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, the review is 'doubly' so." Harrington, 562 U.S. at 105 (citations omitted). "The question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was

3

incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S 465, 473 (2007)).

Here, the state court, on motion for appropriate relief, focused solely on Strickland's prejudice prong when it rejected Petitioner's Strickland claim.[1]  (Doc. 46 at 23.)  The double deference created by Strickland and § 2254(d) thus applies only to Strickland's prejudice prong, and not to whether trial counsel's representation fell below an objective standard of reasonableness. (Id. at 26.)  The court must therefore apply a de novo standard of review to Strickland's first prong in assessing counsel's performance.

Neither party disputes that North Carolina law required the trial court to issue the jury a limiting instruction precluding consideration of PTSD evidence as substantive evidence that a sexual assault has in fact occurred.  According to the Supreme Court of North Carolina, if PTSD evidence is admitted, "the trial judge should take pains to explain to the jurors the limited uses for which the evidence is admitted" and "[i]n no case may the

---

[1] Specifically, in its order denying Petitioner's motion for appropriate relief, the state court "determined that there are no facts alleged in the motion that, if true, would indicate a reasonably probability that the results of the proceedings would have been different." (Doc. 1-1 at 410.)  The court concluded "that the allegations in support of the motion [were] wholly insufficient to indicate that any alleged deficient performance by counsel prejudiced his defense." (Id.)

4

evidence be admitted substantively for the sole purpose of proving that a rape or sexual assault has in fact occurred." State v. Hall, 412 S.E.2d 883, 891 (N.C. 1992). The court articulated two primary problems with PTSD evidence. First, the court noted that "the psychiatric procedures used in developing the diagnosis are designed for therapeutic purposes and are not reliable as fact-finding tools." Id. at 889. And second, the court reasoned that "the potential for prejudice looms large because the jury may accord too much weight to expert opinions stating medical conclusions which were drawn from diagnostic methods having limited merit as fact-finding devices." Id.

Further, neither party contests that the State's expert witness testified that she diagnosed the victim with PTSD based on his allegations of sexual abuse. (See Doc. 46 at 60.) Yet trial counsel neither objected to nor requested a limiting instruction for this PTSD evidence, and so the trial court did not issue a limiting instruction. (Id.); see State v. Quarg, 431 S.E.2d 1, 5 (N.C. 1993) ("The rule, however, in [North Carolina] has long been that an instruction limiting admissibility of testimony to corroboration is not required unless counsel specifically requests such an instruction.").

Nevertheless, as the Magistrate Judge's Recommendation thoroughly documents, courts routinely conclude that trial counsel's failure to request a limiting instruction falls within

5

the boundaries of objectively reasonable litigation strategy. See, e.g., United States v. Lindsay, 157 F.3d 532, 536 (7th Cir. 1998) ("[L]awyers often make the strategic choice not to request limiting instructions, because they wish to avoid underscoring the troublesome material for the jury."). Petitioner correctly asserts that trial counsel's decision to cross-examine the expert witness did not preclude the request for a limiting instruction. (Doc. 49 at 52.) But here, trial counsel could have reasonably concluded that cross-examination provided a better vehicle to blunt the impact of the expert witness's PTSD diagnosis of the victim. In fact, trial counsel elicited admissions from the expert witness that attacked the thoroughness and accuracy of her PTSD diagnosis, undermining the conclusion that the trauma arose from alleged sexual abuse.[2] (Doc. 46 at 63.) Thus, Petitioner has failed to show that trial counsel's performance fell below an objective standard of reasonableness, even under a de novo standard

---

[2] In his objections, Petitioner contends that trial counsel's thorough attack of the PTSD evidence via cross-examination supports a finding of deficient performance because such an attack demonstrates how damaging the evidence was to Petitioner's defense. (Doc. 49 at 47-48.) However, the potentially serious adverse impact of the PTSD evidence also offers a rationale for why trial counsel may have avoided highlighting the damaging material via a limiting instruction. See United States v. Childs, 598 F.2d 169, 176 (D.C. Cir. 1979) ("It is well known that, even when a limiting instruction is likely to aid the accused's cause, astute defense counsel may prefer tactically to forego it in the interest of avoiding its inevitable focus of the jury's attention on unfavorable evidence."); see also Harrington, 562 U.S. at 111 ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.").

6

of review.

Moreover, even if Petitioner had demonstrated trial counsel's deficient performance, he still would have to overcome the double deference of Strickland and § 2254 by showing that the state court unreasonably applied Strickland's prejudice prong. (See id. at 67.) And "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123. Yet as the Magistrate Judge's Recommendation lays out, the jury considered significant trial evidence - unrelated to the PTSD evidence – corroborating the victim's testimony that Petitioner sexually abused the victim. (See Doc. 46 at 67-73.)

To be sure, this case presents notable inconsistencies. The victim, who was twelve years old at the time of testifying and nine years old when the abuse ended, admitted at trial that he had lied about the location where the sexual abuse occurred. (Doc. 39-5 at 141-42.) Moreover, Petitioner argues that the victim's abuse allegations evolved substantially once he began therapy, often expanding in a manner that seemed to incrementally confirm the private suspicions shared between his therapist and the investigating officer. (See Doc. 49 at 18.) For example, according to Petitioner, the victim never mentioned that he had been anally sodomized by Petitioner until two days after his therapist and the investigating officer discussed the possibility

7

that such abuse may have occurred. (See id.) Moreover, Petitioner further contends the victim initially claimed that Petitioner only abused him during January 2014 of his third-grade year, but he later alleged that Petitioner had abused him in first grade as well – shortly after his therapist called the investigating officer with suspicions that the abuse may have occurred before third grade. (See id.) And although the victim ultimately claimed that Petitioner sexually abused him repeatedly from the first through third grades, and as noted below, the jury acquitted Petitioner of all second-grade counts. (Id. at 5-6.)

The State was also unsuccessful in persuading a jury of Petitioner's guilt in its first attempt. Petitioner underwent two trials, and the first ended in a mistrial. (See Doc. 6 at 10.) The victim's testimony changed substantially between the two trials. Petitioner argues, and Respondent does not deny, that in the first trial the victim claimed that Petitioner always locked the wooden door to the bathroom where the abuse allegedly occurred. (Doc. 49 at 11, 14, 15.) During the second trial, however, the victim testified that Petitioner did not lock the door because the door could not lock from the inside. (Doc. 39-5 at 153-54.) Further, although the victim first alleged that he regularly went to Petitioner's classroom throughout second grade, the victim later testified that Petitioner typically came to teacher Karen Sexton's second-grade classroom and only rarely taught in

8

Petitioner's own classroom during second grade. (Id. at 58-60; Doc. 49 at 13.) This shift occurred only after Karen Sexton had testified during the first trial that Petitioner came to her classroom and taught the victim there, rather than in Petitioner's classroom, during second grade. (See Doc. 49 at 19.) This is important because the victim claimed that Petitioner would regularly dismiss the victim from his classroom last so Petitioner could accompany the victim to his next class and abuse him en route in the bathroom. (See Doc. 39-5 at 95, 182.) As noted, Petitioner was acquitted of the charges involving abuse during the second grade.

Another potentially complicating fact was that the victim's grandmother died in January 2014, only days before the victim's behavioral changes that prefaced the sexual abuse allegations became apparent. (Doc. 39-8 at 150.) The State argued that this development was unlikely to have been the source of the victim's symptoms as the victim hardly knew his grandmother. (See id. at 152.) Moreover, although the victim first claimed that Petitioner abused him throughout January 2014, Petitioner only taught the victim three times that month – and never on the week the victim identified as the most recent instance of abuse. (Doc. 39-5 at 172, 237.)

In contrast, Respondent relied on expert witness testimony that children who have experienced sexual abuse often delay

9

disclosure of the full extent of their abuse because of shame or fear. (Doc. 39-7 at 170-73.) According to Respondent's expert witness, it is "not uncommon at all" for a child to provide his therapist with more details of abuse as the relationship develops. (Id. at 176.) Moreover, the expert witness testified that "it's not abnormal at all" for children to confuse details of their abuse, "particularly if the abuse has been ongoing over some amount of time." (Id. at 177.) Finally, according to the expert witness, the victim here may have experienced heightened barriers to disclosure because of the "high level of obedience" children often demonstrate to teachers as authority figures. (Id. at 171-73.)

Ultimately, to the extent Petitioner's conviction rested on the credibility of the witnesses, "federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence." Lucas v. McBride, 505 F. Supp. 2d 329, 358 (N.D. W. Va. 2007) (quoting Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001)). The record contains facts that support conflicting inferences, and indeed the jury in the first trial must have struggled with those as it failed to reach a conviction. No doubt, this tends to be consistent with Petitioner's contention that the jury may have leaned more heavily on the expert testimony in the second trial to determine whether abuse in fact occurred. But even "taking due account of the effect" of any error regarding the PTSD evidence on the jury's

10

findings, as the Magistrate Judge outlined in detail, "the totality of the evidence" supports the jury's finding of guilt beyond a reasonable doubt.  See Strickland, 466 U.S. at 695.  Accordingly, the state court did not unreasonably apply Strickland in finding that Petitioner failed to establish a reasonable probability of a different outcome if trial counsel had requested a limiting instruction for the PTSD evidence.

The court, having appropriately reviewed the portions of the Magistrate Judge's report to which objections were made and having made a de novo determination in accord with the Magistrate Judge's report, therefore adopts the Magistrate Judge's Recommendation.

Petitioner also requests a certificate of appealability. (Doc. 49 at 86.)  "In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).  Pursuant to § 2253(c)(2), a petitioner is entitled to a certificate of appealability only if he has made a "substantial showing of the denial of a constitutional right."  To satisfy this standard, where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate that reasonable jurists could debate whether the issue

11

should have been decided differently or show that the issue is adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, at bottom, the question is whether, even assuming that trial counsel's performance was ineffective, the state court's decision that Petitioner failed to show prejudice was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. The court agrees with Respondent that Petitioner has not made the necessary substantial showing that the issue is debatable or adequate to deserve encouragement to proceed further. Petitioner is, of course, free to seek a certificate of appealability from the circuit justice or a circuit judge. Consequently, Petitioner's request for a certificate of appealability will therefore be denied.

For the reasons stated,

IT IS THEREFORE ORDERED that Respondent's motion for summary judgment (Doc. 25) is GRANTED and that the amended petition (Doc. 6) is DISMISSED. Finding neither a substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability is DENIED.

January 9, 2026
/s/   Thomas D. Schroeder
United States District Judge